UNITED STATES DISTRICT COURT

Northern District of California

DEVELOPMENT SPECIALISTS, INC., an Illinois corporation,

          Plaintiff,

    v.

R.E. LOANS, LLC, a California limited liability company; B-4 PARTNERS, LLC, a California limited liability company; and BAR-K, INC., a California corporation,

          Defendants.
_____/

No. C 10-0635 MEJ

**ORDER RE: PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND ISSUANCE OF WRIT OF ATTACHMENT (DKT. #6)**

**ORDER DISMISSING DEFENDANTS B-4 PARTNERS AND BAR-K**

## I. INTRODUCTION

Before the Court is Plaintiff Development Specialists, Inc.'s ("Plaintiff") Motion for Right to Attach Order ("RTAO") and Issuance of Writ of Attachment, filed on March 3, 2010. (Dkt. #6.) After consideration of the parties' papers and oral arguments, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II. BACKGROUND

Defendants R.E. Loans, LLC ("R.E. Loans"), B-4 Partners, LLC ("B-4") and Bar-K, Inc. ("Bar-K") (collectively "Defendants") are all business entities operating in the State of California. (Pl.'s Mot. 2:24-3:4, Dkt. #6.) R.E. Loans and B-4 are both limited liability companies and Bar-K is a corporation. *Id.* B-4 is the managing member of R.E. Loans. (Defs.' Opp'n 4:9-10, Dkt. #23.) Bar-K, during the time period at issue, was in the process of becoming a member of R.E. Loans. *Id.* at 4:19-21.

On November 13, 2007, submitted an Agreement Letter to Defendants that set out a proposal for Plaintiff to perform services as the acting Collateral Agent for an R.E. Loans Secured Promissary Note. (Compl. ¶ 7, Ex. A, Dkt. #1; Defs.' Opp'n 4:10-12; Ng Decl. ¶ 2, Dkt. #23-2.) Walter Ng, the managing member of B-4, signed the Agreement Letter, at the signature line prepared by Plaintiff,

which included these pre-printed terms "for: R.E. Loans, LLC, B-4 Partners, LLC, Bar-K, Inc." *Id.*

Plaintiff presented the Agreement Letter as a "proposal to provide services" and included references to the key terms which Plaintiff "anticipate[d] . . . the final form of the Security Agreement [would] include." *Id.* The Agreement Letter included short statements addressing each of the following terms of the agreement: (1) indemnification of Plaintiff; (2) description of the duties of a Collateral Agent; (3) the retention of attorneys to represent the interests of Collateral Agent; and (4) basic information regarding compensation and reimbursement of expenses. *Id.* Included in the section on compensation and reimbursement was an initial payment of $10,000 "deemed earned upon payment" and a schedule of per hour rates for various employees of Plaintiff who were most likely to work on the project. *Id.* As Collateral Agent, Plaintiff's primary responsibility was to act as the holder of promissory notes given to investors. (Defs.' Opp'n 12:10-12, Dkt. #23.) Defendants agreed to pay Plaintiff monthly for the services provided, and they were provided with a schedule of per-hour rates for the personnel Plaintiff believed would most likely be responsible for performing the services. (Compl. ¶ 7, Ex. A, Dkt. #1.) In addition to compensation for the work provided as Collateral Agent, Defendants also agreed to pay Plaintiff for the cost of retaining attorneys necessary to represent their interests in that capacity. *Id.*

Plaintiff claims Defendants have failed to pay for work performed pursuant to the aforementioned agreement through September 30, 2009, accruing an outstanding balance of $118,586.12. (Pl.'s Mot. 4:5-7, Dkt. #6.) Additionally, Plaintiff argues that Defendants have failed to pay $72,211.54 to the law firm of Cooley, Godward, Kronish, LLP ("Cooley") for representing the interests of Plaintiff as Collateral Agent. *Id.* at 4:8-14. Plaintiff contends that it has demanded payment to no avail and alleges that Defendants' failure to pay constitutes a breach of contract. *Id.* at 4:14-17. As a result, Plaintiff filed a Complaint for Breach of Contract and Account Stated against Defendants on February 12, 2010. (Dkt. #1.)

On March 3, 2010, Plaintiff filed the instant RTAO motion. (Dkt. #6.) On May 27, 2010, Defendants filed an Opposition (Dkt. #23), and Plaintiff filed a Reply on June 24, 2010 (Dkt. #29). The Court held a hearing on the matter on July 8, 2010.

2

## III. DISCUSSION

In its motion, Plaintiff seeks a RTAO and Order for Issuance of Writ of Attachment against the property of R.E. Loans in the amount of $196,297.66, and also against the property of B-4 and Bar-K in the same amount, to recover damages arising out of the alleged breach of contract. (Pl.'s Mot. 2:12-17, Dkt. #6.) Plaintiff claims that Defendants breached an express contract when they failed to pay Plaintiff for work performed and legal expenses incurred pursuant to the contract. *Id.* at 2:18-20.

In response, Defendants argue that Bar-K and B-4 are improper parties to this action and should therefore be removed. (Defs.' Opp'n 10:5-7, Dkt. #23.) Defendants further argue that a RTAO is improper in the instant case because the fees sought are secured by other property as stated in their agreement. *Id.* at 11:1-3. Finally, Defendants contend that Plaintiff cannot establish probable validity for its breach of contract claim. *Id.* at 12:4-5.

### A.   **Legal Standard**

Federal Rule of Civil Procedure ("Rule") 64(a) provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." These remedies include a writ of attachment. Fed. R. Civ. P. 64(b). The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 7 of Alameda County,* 415 U.S. 423, 436 n. 10 (1974).

California Civil Procedure Code section 484.090(a) provides that a court shall issue a RTAO if it finds each of the following: (1) the claim upon which the attachment is based is a claim upon which an attachment may be issued; (2) the party seeking the attachment has established the probable viability of the claim upon which attachment is based; (3) the attachment is sought only for the purpose of recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment amounts to greater than zero. If, in addition to the finding required in subsection (a), the Court finds that the defendant fails to prove that the property at issue is exempt

1  from attachment, the court shall order that the writ of attachment be issued. Cal. Civ. Proc. Code §
2  484.090(b).

**B.     Application to the Case at Bar**

As a preliminary matter, Defendants claim that Bar-K and B-4 signed the Agreement Letter as members of R.E. Loans, not as contracting parties, and thus they should not be held liable. (Defs.' Opp'n 10:11-12, Dkt. #23.) Accordingly, the Court shall first consider Plaintiff's motion as it relates to Bar-K and B-4.

1.     <u>Bar-K and B-4 as Proper Parties</u>

Regarding Bar-K and B-4, Defendants argue that although Bar-K and B-4 signed the Agreement Letter, they signed as members of R.E. Loans, not as contracting parties. (Defs.' Opp'n 10:11-12, Dkt. #23.) Defendants further argue that the Security Agreement, which sets out the full terms of the contract, was only signed by B-4 as the managing member of R.E. Loans and was not signed by Bar-K at all. *Id.* at 10:13-18.

Plaintiff argues that Bar-K and B-4 are liable under the contract because the managing member of B-4 signed the Agreement Letter on behalf of all parties. (Pl.'s Reply 2:11-14, Dkt. #29.) Plaintiff argues that no ambiguity existed on the signature page of the Agreement Letter, and that when Ng signed, he committed all Defendants to a binding contract. *Id.* at 2:20-23. As a result, Plaintiff seeks to attach property of all named Defendants. (Pl.'s Mot. 2:11-17, Dkt. #6.)

"Where an agreement is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language, the agreement is ambiguous and the court must look beyond the face of the agreement to resolve the ambiguity." *World Savings and Loan Ass'n v. Federal Home Loan Bank of San Francisco*, 2002 WL 1941155, at *3 (N.D. Cal. August 19, 2002) (*citing Cray Research, Inc. v. U.S.*, 44 Fed. Cl. 327 (1999)) (internal quotations omitted). Furthermore, "[t]here is a well-established common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Id.* at *6. (*citing Mastrobuono v. Sherson Lehman*, 514 U.S. 52 (1995)) (internal quotations omitted).

Here, it would be reasonable to interpret Ng's signature as binding all named Defendants, as

4

all three are listed under the signature line. However, considering the relationship between R.E. Loans, Bar-K and B-4, it would be equally reasonable to conclude that Bar-K and B-4 were signing only as members of R.E. Loans. Therefore, the Court will look to the extrinsic evidence presented to resolve the ambiguity.

Plaintiff submitted several invoices in support of its Motion. (Everett Decl. ¶ 11, Ex. 2, Dkt. #6-3.) All of the invoices are billed to either "R.E. Loans" or "R.E. Loans, LLC." *Id.* Furthermore, neither Bar-K nor B-4 are referenced on any invoice. *Id.*

In addition to the invoices, Defendants point to a second document between the parties to demonstrate the capacity in which Bar-K and B-4 were included in the agreement. On November 1, 2007, Defendants drafted the Security Agreement referenced in the Agreement Letter. (Imfeld Decl. ¶ 2, Ex. B p.1, Dkt. #23-4.)[1] The Security Agreement was a longer, more detailed description of the terms laid out in the November 13, 2007 Agreement Letter from Plaintiff. *Id.* Walter Ng also signed the Security Agreement. *Id.* at p.12-13. The signature page lists R.E. Loans as the Grantor. *Id.* Ng signed twice, once as the "Managing Member" of B-4 Partners, and a second time, under the heading "Accepted and Acknowledged By Secured Parties" as "Manager of B-4 Partners, LLC, Managing Member of R.E. Loans, LLC, as Attorney-in-Fact." *Id.* at p.12. The inclusion of the phrase "Managing Member of" indicates to the court that B-4 was only included to qualify Ng's position within R.E. Loans. The Court finds that the signature page of the Security Agreement is less ambiguous than the Agreement Letter because it provides a clearer implication of the capacity in which Ng signed, as the Agreement Letter only lists the names of each entity, and does not describe the capacity in which they are involved. (Compl. ¶ 7, Ex. A, Dkt. #1.) Further, Bar-K is

---

[1] The Security Agreement is also included in the Ng Declaration as Exhibit A. However, the version in Exhibit A does not have a signature from a DSI representative and also has the following differences from the version referenced here: a) Paragraph 2 of Exhibit B identifies Development Specialists, Inc. as the agent of the Secured Parties, whereas Paragraph 2 of Exhibit A describes the agent generically without name; and b) the last page of Exhibit B identifies Development Specialists, Inc. as the Collateral Agent. Because the version cited appears to be more complete, the Court will reference it as the operative document.

5

1  not even listed on the signature page of the Security Agreement.  In fact, neither B-4 nor Bar-K
2  appear in any of the language in the agreements, with the exception of the signature pages.

3  Thus, considering the extrinsic evidence and construing any ambiguity in the Agreement
4  Letter against Plaintiff as the drafter of that document, the Court finds that Defendants are correct in
5  their assertion that Bar-K and B-4 are improper parties to the instant action.  The Court finds that the
6  two parties were listed only in reference to Ng's position within R.E. Loans.  Accordingly,
7  attachment of any property from Bar-K or B-4 is improper and the Court therefore DENIES
8  Plaintiff's Motion for Right to Attach Order against Defendants Bar-K and B-4 and hereby
9  DISMISSES them from this action.

10  2. <u>R.E. Loans</u>

11  Having determined that R.E. Loans is the proper defendant in this case, the Court now turns
12  to the elements listed in California Civil Procedure Code section 484.090(a), as discussed above.  As
13  to the third and fourth elements under section 484.090(a), R.E. Loans does not contest that the
14  attachment is sought only to recover on the claim upon which attachment is based, and there is no
15  dispute that the amount to be secured by the attachment is greater than zero.  (Pl.'s Mot. 9:20-21,
16  10:1, Dkt. #6.)  Thus, the third and fourth elements are satisfied and the Court need only address the
17  first two elements — whether Plaintiff's claim is one upon which attachment may issue; and
18  whether Plaintiff has established a probable validity of prevailing on the claim.

19  *a.   Whether Plaintiff's Claim is One Upon Which an Attachment May Be Issued*

20  Plaintiff claims that pursuant to the express contract between the two parties, R.E. Loans
21  owes the total balance due for services provided and costs incurred by Plaintiff as Collateral Agent
22  for R.E. Loans.  (Pl.'s Mot. 3:17-22, Dkt. #6.)  Plaintiff further argues that R.E. Loans is liable,
23  under the existing contract, for legal expenses Plaintiff incurred protecting its interest as Collateral
24  Agent.  *Id.* at 7:3-4.  Finally, Plaintiff claims that under the terms of the Agreement Letter, R.E.
25  Loans is liable for attorneys fees incurred in prosecuting this matter.  *Id.* at 7:11-16.

26  R.E. Loans argues that the instant claim is not one upon which attachment may issue because
27  Plaintiff is secured for an amount greater than the attachment being sought.  (Defs.' Opp'n 11:1-3,
28

6

Dkt. #23.) Specifically, R.E. Loans asserts that under the Security Agreement, the Collateral Agent is included under the classification of "Secured Parties," and as such Plaintiff is entitled to the "Secured Obligations" also stated in the Security Agreement, which include "any other amounts owed from Grantor to the Secured Parties." (Imfeld Decl. ¶ 4, Ex. B p. 1,3, Dkt. #23-5.) R.E. Loans claims that the Agreement Letter allows "[f]or the Collateral Agent to retain title to the pledged assets sufficient to provide value to the indemnities and for the compensation of the Collateral Agent," and claims this is proof of the secured nature of the agreement between the parties. (Ng Decl. ¶ 5, Dkt. #23-2.) R.E. Loans offers the assurance by Ng that the notes held by Plaintiff would "easily provide for ten times the amount [Plaintiff] is seeking to attach in this case." (Ng Decl. ¶ 10, Dkt. #23-2.)

A claim is one upon which an attachment may be issued when the claim is for money, based upon an express or implied contract, and where the claim is for a fixed or readily ascertainable amount greater than or equal to five hundred dollars. Cal. Civ. Proc. Code § 483.010. An attachment may be issued in "a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite." *CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.*, 115 Cal. App. 4th 537, 540 (2004) (internal citations and quotations omitted). However, the amount which a plaintiff can properly seek in a request for a RTAO shall be reduced by "[t]he value of any security interest in the property of the defendant held by the plaintiff to secure the defendant's indebtedness claimed by the plaintiff." Cal. Civ. Proc. Code §483.015(b)(4).

Here, the Court finds that the damages sought by Plaintiff are readily ascertainable through the Agreement Letter and Security Agreement. The Agreement Letter provides for the compensation and reimbursement of Plaintiff for duties performed as Collateral Agent for R.E. Loans and includes a schedule of per hour rates for each of the employees Plaintiff reasonably anticipated would be involved in the completion of such duties. (Everett Decl. ¶ 4, Ex. 1, Dkt. #6-2.) Further, both the Agreement Letter and the Security Agreement allow for payment by R.E. Loans of all costs and expenses incurred by Plaintiff as Collateral Agent, including reasonable

7

attorney's fees.  (*Id.*; Imfeld Decl. ¶ 2, Ex. B p. 9, Dkt. #23-5.)  The invoices submitted by Plaintiff reflect the work performed as Collateral Agent and the corresponding balance due.  (Everett Decl. ¶ 11, Ex. 2, Dkt. #6-3.)  Similarly, the invoices submitted from the Cooley firm reflect the balance due for attorney's fees and costs for work completed on behalf of Plaintiff as allowed by the aforementioned provisions of the Agreement Letter and Security Agreements.  (Everett Decl. ¶ 14, Ex. 3, Dkt. #6-4.)

Additionally, the Court finds that Plaintiff's computation of damages sought is reasonable and definite.  All told, Plaintiff seeks a Writ of Attachment against the property of R.E. Loans in the amount of $196,297.66.  (Pl.'s Mot. 2:11-17, Dkt. #6.)  For the services provided and reimbursement of reasonable costs, Plaintiff claims R.E. Loans has failed to pay the following amounts: (1) $8,307.03 for the period beginning at the onset of the contract and spanning through December 31, 2008; (2) $57,274.48 for work performed January 1, 2009 through March 31, 2009; (3) $42,882.71 for April 1, 2009 through June 30, 2009; and (4) $10,121.90 for May 1, 2009 through September 30, 2009.  (Everett Decl. ¶ 11, Ex. 2, Dkt. #6-3.)

Further, Plaintiff contends that R.E. Loans owes the following amounts for legal services provided by the Cooley firm to Plaintiff as Collateral Agent for R.E. Loans: (1) $4,615.00 for services rendered during January 2009; (2) $4,207.75 for February 2009; (3) $41,379.14 for March 2009; (4) $14,053.64 for April 2009; (5) $3,977.64 for May 2009; (6) $1,020.39 for June 2009; (7) $498.98 for July 2009; (8) $710.00 for August 2009; (9) $213.00 for September 2009; and (10) $1,536.00 for October 2009.  (Everett Decl. ¶ 14, Ex. 3, Dkt. #6-4.)

Finally, although Plaintiff has not attached a computation of attorney's fees incurred prosecuting the instant matter, it has estimated that it is owed $5,500.  (Pl.'s Mot. 7:11-16, Dkt. #6.)  Taking into consideration the conservative amount sought, the Court finds the estimation reasonable at this early stage of the litigation.

As discussed above, R.E. Loans argues that the instant claim is not one upon which attachment may issue because Plaintiff is secured for an amount greater than the attachment being sought.  (Defs.' Opp'n 11:1-3, Dkt. #23.)  Plaintiff argues that R.E. Loans does not provide any

8

tangible evidence in support of this contention. (Pl.'s Reply 5:6-7, Dkt. #29.) The Court agrees with Plaintiff. Beyond the declaration of Ng and the mention of securities within the Security Agreement drafted by R.E. Loans, no further proof is provided to support its argument. Without sufficient documentation as to the value of the notes held by Plaintiff, the Court is unable to conclude that security exists to the extent that it would deem the instant claim one upon which attachment cannot be issued.

Accordingly, based on the foregoing analysis, the Court finds that the claim presented is one upon which attachment can be sought.

    *b.*  *Whether Plaintiff Has Established the Probable Validity of the Claim*

Plaintiff claims it has "fully and satisfactorily performed its duties as Collateral Agent" pursuant to the express contract it entered into with R.E. Loans. (Pl.'s Mot. 8:19-22, Dkt. #6.) Plaintiff further claims that, pursuant to the contract, R.E. Loans is liable for compensation for the aforementioned services Plaintiff provided, as well as legal expenses incurred to protect its interests as Collateral Agent. *Id.* at 8:12-19. Plaintiff contends that R.E. Loans' failure to deliver payment for services provided or legal fees incurred represents a breach of the contract. *Id.* at 9:1-2. Finally, Plaintiff maintains that R.E. Loans' breach resulted in damages in excess of $196,297.66. *Id.* at 9:10-13.

In response, R.E. Loans claims that Plaintiff exceeded the duties required of a Collateral Agent, and that Plaintiff has not demonstrated that the legal services retained to protect its interests as Collateral Agent were "necessary" as the Security Agreement requires. (Defs.' Opp'n 12:10-19, Dkt. # 23.)

California Civil Procedure Code section 481.190 provides that "[a] claim has probable validity where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." In California, to be awarded judgment on a breach of contract claim, a plaintiff must demonstrate the existence of a contract, performance by the plaintiff, breach by the defendant, and damages as a result of that breach. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

9

1    Here, the Court finds that, at this early stage of the litigation, Plaintiff has established the
2 probable validity of its claim.  R.E. Loans does not contest the existence of an express contract, nor
3 that Plaintiff's services were provided under the contract.  Further, R.E. Loans does not deny that it
4 failed to compensate or reimburse Plaintiff in the amount Plaintiff seeks in damages.  Instead, R.E.
5 Loans attempts to justify the alleged breach.  Plaintiff has produced invoices for a nearly ten-month
6 span for both the services rendered as Collateral Agent and legal services retained to protect its
7 interests as such.  (Everett Decl. ¶ 11, Ex. 2, Dkt. #6-3; Everett Decl. ¶ 14, Ex. 3, Dkt. # 6-4.)
8 Although R.E. Loans suggests that Plaintiff acted outside of the scope of their contractual duty and
9 that the legal services provided were not all "necessary," the Court has heard no evidence that R.E.
10 Loans communicated these objections before Plaintiff filed its complaint in this action. Furthermore,
11 the Court, in examining both the Agreement Letter and the Security Agreement, does not find
12 language to support the argument that Plaintiff owed a duty to R.E. Loans to obtain prior approval
13 from R.E. Loans to retain legal counsel to protect its interests as Collateral Agent.
14    A motion for RTAO must be supported by a showing that Plaintiff, on the facts presented,
15 would be entitled to judgment on the claim at issue. Cal. Civ. Pro. Code §484.030.  Based upon the
16 facts presented, the Court finds that R.E. Loans breached an express contract with Plaintiff by failing
17 to pay for services rendered and, as a result, Plaintiff suffered damages.  Accordingly, the Court
18 finds that Plaintiff has met its burden to show that it is more likely than not that it will prevail on its
19 claim.

### IV.    CONCLUSION

20    Based on the foregoing, the Court GRANTS Plaintiff's Motion for Right to Attach Order
21 against the property of R.E. Loans in the amount of $196,297.66, pursuant to Rule 64 and California
22 Code of Civil Procedure section 484.10.

**IT IS SO ORDERED.**

Dated: October 14, 2010

Maria-Elena James
Chief United States Magistrate Judge

10